UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEMJET TECHNOLOGY LIMITED, an Ireland limited liability company; MEMJET US SERVICES, INC., a Delaware Corporation,<br><br>            Plaintiff,<br><br>v.<br><br>VANGUARD GRAPHICS INTERNATIONAL, LLC, a Minnesota limited liability company; PRINTWARE, LLC, a Minnesota limited liability company,<br><br>            Defendants. | Case No.: 3:23-cv-01810-BEN-AHG<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS**<br><br><br>**[ECF No. 6]** |

Plaintiffs Memjet Technology Limited and Memjet U.S. Services, Inc. ("Plaintiffs") bring their complaint for false advertising, trade libel, unfair business practices and interference with prospective economic relations against Defendants Vanguard Graphics International, LLC ("Vanguard") and Printware, LLC ("Printware") (collectively, "Defendants"). ECF No. 1 ("Compl."). Before the Court is Defendants' motion to dismiss. ECF No. 6. Plaintiffs opposed the motion. ECF No. 7 ("Oppo."). Defendants submitted a reply. ECF No. 8 ("Reply"). The motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. ECF No. 9.

For the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion to dismiss.

## I. BACKGROUND[1]

Plaintiff Memjet Technology describes itself as a limited liability company based in Ireland and the "registered owner of the trademarks at issue in this case." ECF No. 1, Compl. ¶ 2. Plaintiff Memjet U.S. is described as handling "all customer and supplier relation services." *Id*. ¶ 3. The complaint does not delineate the nature of Plaintiffs' businesses, though from later allegations and references made in the briefing, the Court infers at least one of the Plaintiffs is a manufacturer of certain printer components. *See id*. ¶¶ 9-11; Mot. at 1; Oppo. at 1, 12. Similarly, Defendant Vanguard is alleged to be a holding company that "specializes in acquiring and managing companies in the graphic arts industry." *Id*. ¶ 4. Defendant Printware is alleged to be a wholly owned subsidiary of Vanguard that "continuously supplies and services customers throughout the State of California." *Id*. ¶ 5. Again, the Court infers from later allegations and the briefing that at least one Defendant manufactures printers. *See id*. ¶¶ 9-11; Mot. at 1.

Plaintiffs allege that on March 24, 2023, the Defendants sent a communication to approximately twenty (20) business and individuals (the "Communication"). *Id*. ¶ 9. This Communication contained a false statement that Memjet would no longer be producing a "Duraflex print head…effective immediately." *Id*. ¶ 10.[2] The Communication also included a comment that Defendants were "disappointed in Memjet's decision[,]" and would "provide even better options[,]" moving forward. Compl. ¶ 10. The complaint alleges as a result of the Communication, Plaintiffs'

---

[1] For purposes of these motions, the Court assumes the facts pled in the complaint are true. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[2] Although the complaint does not contain a description of the DuraFlex printer head, the parties describe it in the briefing as a "printer engine" which Defendants planned to use for laser printer that was in development. Mot. at 1.

customers have stopped ordering DuraFlex units and their associated components. *Id.* ¶ 11.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable, plausible claim. *See Balistreri v. Pacific Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive a motion to dismiss only if, taking all well pled factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss tests the "legal sufficiency" of the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). Where a motion to dismiss is granted, leave to amend should be liberally allowed "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## III. DISCUSSION

Defendants challenge the factual sufficiency of all Plaintiffs' claims. The parties' arguments are outlined below.

### A. Lanham Act Claim

Plaintiffs' first cause of action is for violation of the federal false advertising law, 15 U.S.C. § 1125(a) *et seq* ("Lanham Act").[3] Compl. ¶¶ 15-28. Section 1125(a) of the Lanham Act "prohibits the use of false designations of origin, false descriptions, and

---

[3] Although the Lanham Act is now codified under Section 1125(a), many courts still refer to these claims as "Section 43(a)" claims. *See, e.g., Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 25 (2003); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 960 (D.C. Cir. 1990) ("…have sued each other under section 43(a) of the Lanham Act, 15 U.S.C. S 1125(a) (1982)…").

false representations in the advertising and sale of goods and services." *Seoul Laser Dieboard System Co., Ltd. v. Serviform, S.r.l.*, 957 F.Supp.2d 1189, 1199 (S.D. Cal. 2013) (citation omitted).

A false association claim under section 1125(a)(1)(A) "makes actionable any commercial representation that is likely to cause confusion as to the origin of goods." *Seoul Laser*, 957 F.Supp.2d at 1199 (quoting *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1306 (Fed. Cir. 2009)). "Origin in this context refers to the producer of the tangible goods that are offered for sale[.]" *Seoul Laser*, at 1199 (quoting *Dastar Corp*, 539 U.S. at 37). A false advertising claim under section 1125(a)(1)(B) requires the plaintiff to plead: (1) defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had a tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result, either by direct diversion of sales or by lessening of goodwill. *Seoul Laser*, at 1200 (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 829 (9th Cir. 2002)).

Here, the complaint's allegations are too sparse for the Court to determine whether the Plaintiff sufficiently pleads a cause of action under the Lanham Act. First, the complaint does not set forth whether it seeks to make a false association claim under section 1125(a)(1)(A) or a false advertisement claim under 1125(a)(1)(B). At least one district court has found this ambiguity alone is grounds for dismissal. *Seoul Laser*, at 1199 ("It is not clear from the Complaint whether Plaintiff is asserting a 'false association' claim under § 43(a)(1)(A) or a 'false advertising' claim under § 43(a)(1)(B). This ambiguity alone raises fair notice concerns.").

Second, the complaint wholly fails to allege the nature of either Plaintiffs' or Defendants' businesses or provide sufficient detail regarding the Communication. Without more, it cannot be determined whether the Communication appeared in a

commercial advertisement or promotion, or if the Communication commented on the "nature, characteristics, qualities" of Plaintiffs' goods or services.[4]  Because it appears this claim could be cured by inclusion of additional information in the complaint, the Court dismisses this claim without prejudice.

### B. Trade Libel Claim

Plaintiffs' second cause of action is for trade libel.  *See* Compl. ¶¶ 29-37.  Although the definition of trade libel is somewhat amorphous under common law, the California Supreme Court has described it as containing three important elements: (1) a false or misleading statement; (2) which specifically refers to the plaintiff's product or business; and (3) clearly derogates that product or business.  *See Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal.4th 277, 291-295 (2014).  This can be achieved directly or through "clear implication."  *Hartford*, 59 Cal.4th at 294.  The court went on to explain that, "[d]isparagement by reasonable implication required more than a statement that may conceivably or plausibly be construed as derogatory to a specific product or business.  A reasonable implication in this context means a clear or necessary inference." *Id*. at 295.

Defendants argue Plaintiffs fail to state a claim for trade libel because the Communication does not disparage Plaintiffs' product or services, either directly or by "clear implication."  Mot. at 4-5.  Plaintiffs argue that the Communication was disparaging to its services and character as a business because, "[t]he implication of Plaintiffs discontinuing a product in the print industry 'effective immediately,' without providing adequate notice, alternative options, or strategic advice is that Plaintiffs are

---

[4] Defendants attach a letter to their motion which appears to be the basis of Plaintiffs' complaint.  *See* ECF No. 6-2.  Defendants did not make a request for judicial notice of this document, and Plaintiffs did not object to (or even acknowledge) the letter in their opposition.  Given the parties' silence, and the complaint's bare bones allegations, the Court need not incorporate the letter into analysis of Plaintiffs' claims at this time.

unreliable, non-transparent, and incapable of maintaining a product in the marketplace." Oppo. at 13.

In *Hartford Casualty Ins. Co. v. Swift Distrib., Inc.*, the California Supreme Court weighed in regarding disparagement by implication. 59 Cal.4th 277, 295 (2014). The *Hartford* court noted,

> "There is no question that Charlotte Russe's discounted prices on People Liberation's clothing specifically referred to People Liberation's product. But a mere reduction of price may suggest any number of business motivations; it does not clearly indicate that the seller believes the product is of poor quality. Disparagement by 'reasonable implication' requires more than a statement that may conceivably or plausibly be construed as derogatory to a specific product or business. A 'reasonable implication' in this context means a clear or necessary inference."

*Hartford*, 59 Cal.4th at 295 (internal citations omitted) (discussing *Travelers Property Casualty Co. of Am. v. Charlotte Russe Holding, Inc.*, 207 Cal.App.4th 969 (2012)). In this case, the Court cannot find that Defendants' statement about a product's discontinuance amounts to a "clear or necessary" inference derogating the Plaintiffs' businesses. The Court concludes this claim could also potentially be cured, and dismisses this claim without prejudice.

C. Interference with Prospective Economic Relations

Plaintiffs' third and fourth causes of action are for intentional and negligent interference with prospective economic relations. See Compl. ¶¶ 38-54. To state a claim for interference with prospective economic relations, a plaintiff must allege: (1) existence of economic relationship between plaintiff and some third party with a probability of future economic benefit; (2) defendant had knowledge of relationship; (3) intentional or negligent acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; (5) economic harm to plaintiff proximately caused by the acts of the defendant. *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 852 (9th Cir. 2005) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003)).

Defendants argue the complaint does not sufficiently describe the relationships that were allegedly disrupted by the Communication. Mot. at 9. Plaintiffs argue they are not required, at the pleading stage, to "identify the third party (customers) by first name or otherwise." Oppo. at 14. Defendants are correct that failure to identify a prospective economic relationship with a specific third party is grounds for dismissal. *See Seoul Laser*, 957 F.Supp.2d at 1201 ("Plaintiff fails to allege that it was likely to receive an economic benefit from a specific third party, and it fails to identify a specific opportunity lost."); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (dismissing similar allegation of disruption of relationship with "customers" as conclusory in the absence of facts relating to any actual disruption).

However, the concern in *Seoul Laser* and *Sybersound* was focused on the principle that this claim cannot rest on a mere allegation that a plaintiff lost customers with whom it yet did not have any contracts or relationships. In those contexts, "lost customers" referred to the marketplace of potential, hypothetical customers. Here, however, the complaint alleges a specific relationship with at least one customer which was disrupted: "At least one customer ordered approximately 50 less DuraFlex units…" Compl. ¶ 14. Additionally, the complaint alleges more than one of Plaintiffs' customers "stopped order[ing] DuraFlex units and their associated components." *Id.* ¶ 11. The Court finds at the pleading stage, this is sufficient.

### D. California's Unfair Competition Law ("UCL")

Plaintiffs' fifth cause of action is for violation of California's UCL. *See id.* ¶¶ 55-57. California's Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business acts that are deceptive, untrue, or misleading. *See* Cal. Bus. & Prof. Code § 17200. Unfair competition is defined very broadly to include "anything that can properly be called a business practice and that at the same time is forbidden by law." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Each

prong of the UCL provides a separate and distinct theory of liability and independent basis for relief. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Defendants argue Plaintiffs' UCL claim fails because they would not be entitled to any of the relief available under the statute (restitution or injunctive relief). Mot. at 6. Defendants argue Plaintiffs' have failed to state a claim because they do not allege Defendants have obtained any money from Plaintiffs which would qualify for restitution, nor do they allege any of the type of on-going behavior that would warrant injunctive relief. Mot. at 6.

Plaintiffs first argue they have adequately alleged a need for restitution because they "*had* a vested ownership interest in the money they *provided* to third parties for corrective advertising." Oppo. at 17 (emphasis added). However, while this statement implies Plaintiffs have already paid for corrective advertising, this does not match allegations in the complaint. The complaint states, "Memjet *estimates* that corrective advertising *will cost* approximately $100,000." Compl. ¶ 14 (emphasis added). According to the complaint, Plaintiffs have not yet spent this money.

Second, Plaintiffs argue they have adequately alleged entitlement to an injunction because the complaint sufficiently alleges that, "unless enjoined, Plaintiffs will continue to be harmed by Defendants' unlawful conduct." Oppo. at 18 (citing Compl. ¶ 57). The cited paragraph in the complaint states, "Plaintiff is entitled to an injunction prohibiting Defendants from continuing the practices described above…" Compl. ¶ 57. Yet, the basis of the complaint is a single incident occurring in March of 2023, and it is unclear how this conduct would be "on-going" or how an injunction would "prevent future harms[.]" Aside from Plaintiffs' dubious entitlement to the statute's sole remedies, the Court notes the complaint's averments related to the UCL claim are terminally vague. They do not identify which prong of the UCL the Plaintiffs seek to invoke, or identify what conduct would align with any of the three distinct prongs. Accordingly, the Court dismisses this claim without prejudice.

# IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS-IN-PART** Defendants' motion to dismiss as follows:

1. Defendants' motion to dismiss Plaintiffs' first cause of action for violation of the Lanham Act is **GRATNED** without prejudice.

2. Defendants' motion to dismiss Plaintiffs' second cause of action for trade libel is **GRANTED** without prejudice.

3. Defendants' motion to dismiss Plaintiffs' third cause of action for intentional interference with prospective economic relations is **DENIED**.

4. Defendants' motion to dismiss Plaintiffs' fourth cause of action for negligent interference with prospective economic relations is **DENIED**.

5. Defendants' motion to dismiss Plaintiffs' fifth cause of action for violation of California's UCL is **GRANTED** without prejudice.

6. Defendants' motion to dismiss Plaintiffs' sixth cause of action for Accounting is **GRANTED** without prejudice.

Plaintiff shall have twenty-one (21) days from the date of this order to file an amended complaint curing the deficiencies noted herein.

**IT IS SO ORDERED.**

Dated: August 12, 2024

HON. ROGER T. BENITEZ
United States District Judge