UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEMJET TECHNOLOGY LIMITED; and MEMJET US SERVICES INC., <br><br> Plaintiffs, <br><br> v. <br><br> VANGUARD GRAPHICS INTERNATIONAL, LLC; and PRINTWARE, LLC, <br><br> Defendants. | Case No.: 3:23-cv-1810-JES-AHG <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> **[ECF No. 16]** |

Pending before the Court is the Defendants' Motion to Dismiss certain claims in the First Amended Complaint. ECF No. 16. Plaintiffs filed an opposition, and Defendants filed a reply. ECF Nos. 18, 19. On October 23, 2024, the Court held a hearing on the motion and took the matter under submission. ECF No. 23. After due consideration and for the reasons discussed below, the Court **GRANTS** Defendants' motion.

## I.   BACKGROUND

On August 30, 2024, Plaintiffs filed the First Amended Complaint ("FAC"), which is the operative complaint in this matter. ECF No. 15. Plaintiffs Memjet Technology Limited and Memjet US Services Inc. (collectively, "Memjet") and Defendants Vanguard Graphics International, LLC ("Vanguard") and Printware, LLC ("Printware") (collectively

"Defendants") are sellers of digital inkjet products for use in commercial industries. ECF No. 2 ("FAC") ¶ 1. Defendant Printware is alleged to be a downstream reseller of certain of Memjet's printing products. *Id.* The products at issue here are Memjet's DuraFlex printheads. *Id.*

On or about March 24, 2023, Plaintiffs alleged that Defendants disseminated a communication to approximately twenty businesses in the digital inkjet printing industry that included the following statements:

(1) "Duraflex print head will no longer be produced by Memjet effective immediately."

(2) Defendants were "disappointed in Memjet's decision . . ." and will "provide even better options . . ." moving forward.

*Id.* ¶ 10. Plaintiffs alleged that these statements were libelous regarding their products because they incorrectly informed the businesses that Memjet was discontinuing Duraflex printheads immediately without warning to its customers and suggested that the Duraflex printheads were "substandard, obsolete, and becoming irrelevant within the print industry." *Id.* In addition, Plaintiffs allege that the communication violated Memjet's trademarks by displaying the Duraflex name and logo. *Id.* ¶ 13.

Based on the foregoing, Plaintiffs allege causes of action for: (1) False Advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); (2) trade libel; (3) intentional inference with prospective economic relations; (4) negligent interference with prospective economic relations; and (5) California's Unfair Competition Law ("UCL"), California Business & Professional Code §§ 17200 *et seq. Id.* ¶¶ 15-57.

The Court previously granted Defendants' first motion to dismiss. ECF No. 12. In that motion, Defendants asked for the Court to dismiss all five causes of action. ECF No. 6. The Court denied the motion as to the intentional and negligent interference with prospective economic relations claims, but granted the motion as to the other causes of action. ECF No. 12 at 9. In response to that order, Plaintiffs then filed the FAC. In the

instant motion, Defendants now move to dismiss the trade libel claim, the UCL claim, and the Lanham Act false advertising claim.

## II.   LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 557 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

## III.   DISCUSSION

The Court will address each basis of Defendants' motion to dismiss—the trade libel claim, the UCL claim, and the Lanham Act false advertising claim—separately below.

### A.   Request for Judicial Notice

As a threshold matter, the Court first addresses Defendants' request for judicial notice. In their motion, they request that the Court take judicial notice of the actual full communication that Plaintiffs allege they sent out that contains the statements at issue. ECF No. 16-4. The text reads as follows:

> **Dear iJetColor Customers and Prospects:**
>
> Thank you for your interest, support and business with our iJetColor™ inkjet envelope products that we distribute through Printware, a wholly owned subsidiary of VGI, Holdings LLC. As we enter our second decade of inkjet development we're excited to integrate and bring the latest innovations to our customers and future customers. We have important information to share with you about our proposed new iJetColor High Speed Envelope products using Memjet's *Duraflex* print head that we previewed in October of 2022.
>
> **The iJetColor1275 Duraflex Based System is Cancelled:** Printware was notified this month that production of the Duraflex print head *will no longer be produced* by Memjet *effective immediately*. We have confirmed the details of this decision with other long-time inkjet OEMs and have reviewed all our options. At this point of the development, while we evaluated, committed purchases of Duraflex print heads and began development of unique high-speed envelope and packaging feeding systems – we need to cease this development as the future of Duraflex is unknowable. With Memjet's decision to stop production we cannot in good conscience and given the need for future support expect to bring this product to market.
>
> **What's next?** We'll continue to evaluate and develop new technologies to provide even better options for you to benefit from inkjet – including both new inkjet print heads from other suppliers and exciting options with our existing Thermal Inkjet print heads from HP. While we are disappointed in Memjet's decision, we remain optimistic for the future of more page wide inkjet solutions to help you profit from inkjet.
>
> Please feel free to contact me with any questions or concerns.

ECF No. 16-3.

On a motion to dismiss, courts are generally limited to the complaint and may not consider materials outside the pleadings. *Elizabeth Retail Properties LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 984 (D. Or. 2015). However, courts may take judicial notice of certain documents, including those referenced in the complaint, without converting the motion to dismiss to a summary judgment motion. *Doe v. Successfulmatch.com*, No. 13-CV-03376, 2014 WL 1494347, at *2 n. 2 (N.D. Cal. Apr. 16, 2014). The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no

disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

In response to the request for judicial notice, Plaintiffs acknowledge the ability of the Court to take judicial notice of the document as incorporated by reference into the complaint. ECF No. 18 at 9-10. Importantly, Plaintiffs do not dispute its authenticity and that it is indeed the communication that is referenced in the FAC. *See* FAC ¶ 10. Accordingly, the Court finds it appropriate to take judicial notice of the actual March 24, 2023 communication and **GRANTS** the request.

### B.  Trade Libel Claim

As the Court stated in its previous order, the California Supreme Court has described trade libel as containing three important elements: (1) a false or misleading statement; (2) which specifically refers to the plaintiff's product or business; and (3) clearly derogates that product or business. *See Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 291-295 (2014). Derogation can be established directly or through reasonable implication. *Id.* at 294. The court went on to explain that, "[d]isparagement by reasonable implication require[d] more than a statement that may conceivably or plausibly be construed as derogatory to a specific product or business. A reasonable implication in this context means a clear or necessary inference." *Id.* at 295. District courts have dismissed claims where the statement at issue did not meet this "heightened standard." *Diaz v. Heredia*, No. 5:20-CV-02332-JWH-KK, 2024 WL 4381364, at *6 (C.D. Cal. Jan. 4, 2024); *see, e.g.*, *Nestle USA, Inc. v. Crest Foods, Inc.*, 2019 WL 2619635, at *10 (C.D. Cal. Mar. 8, 2019) (dismissing a trade libel claim after finding that alleged communications "presented subtle, implied comments that were not clearly disparaging"); *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, 459 F. Supp. 3d 1294, 1300–01 (C.D. Cal. 2020) (statement that Plaintiff's company was the "only" one that Defendant did not work with did not carry a clear or necessary implication something must be wrong with Plaintiff's company).

The Court previously dismissed this claim because it found that the statements in the communication regarding Plaintiffs' Duraflex product being discontinued immediately did

not meet the "clear or necessary" inference standard for the statements to be derogatory. ECF No. 12 at 5-6. Defendants argue that the FAC does not include any amendments that would lead to a different result—the statements in the communication are the same as before. ECF No. 16-1 at 8. On the other hand, Plaintiffs argue that the FAC does contain additional allegations, including the following:

- "[F]ollowing the release of the Communication, MEMJET's executives and sales personnel have had to address countless phone calls, emails and in-person inquiries about the quality and longevity of the DuraFlex printhead."
- "In April of 2023, MEMJET's team was even forced to host a live 'town hall' meeting with one if its OEM providers and their respective customers to explain the falsity of the Communication and assure these current and future customers that MEMJET would continue to supply and service the DuraFlex printhead."
- "Notwithstanding MEMJET's mitigation efforts, as recently as July of 2024, one of MEMJET's larger OEM providers indicated that it would significantly reduce its DuraFlex printhead forecast as a result of the Communication."

FAC ¶ 32. Plaintiffs argue that these new allegations evidence a "clear and necessary" inference regarding the statements in the communication. ECF No. 18 at 16.

"[A] product defamation or trade libel claim must be based on specific statements, and '[t]he defamatory character of the language must be apparent from the words themselves.'" *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998) (quoting *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 822 (9th Cir. 1995)). Thus, evidence of how the statements may have been subjectively taken is of questionable relevance to this inquiry and the inquiry is focused on whether a derogatory meaning can be found in the communication itself. *See Forsher v. Bugliosi*, 26 Cal. 3d 792, 806 (1980). The new allegations that Plaintiffs add are not additional statements found in the communication, but rather allegations on what some of their customers may have taken the statements to mean. While not completely irrelevant, the Court's ultimate inquiry

1  remains whether the statements in the communication carry an implication from a
2  reasonable person's point of view that are clearly or necessarily derogatory.

3  The Court concludes again that the statements do not meet this standard. The Court
4  finds the reasoning from the *Rumble* case cited above instructive. In *Rumble*, the court
5  evaluated whether a statement that the plaintiff company was the "only" one that the
6  defendant did not work with to carry a clear or necessary derogatory implication. 459 F.
7  Supp. 3d at 1300. The court found that the statement did not because "there are a number
8  of reasons why companies might not work together that are unrelated to the allegedly
9  defamed company's quality of service. For example, the companies' higher-ups may not
10 get along, or one company may have an exclusive arrangement with a competitor of the
11 other." *Id.* at 1301. The court concluded that, therefore, the statement "does not carry a
12 clear and necessary implication that something must be wrong with Rumble." *Id.* Similarly
13 here, a statement that the Duraflex printheads are being discontinued effective
14 immediately, even if true, would not necessarily or clearly carry an implication that
15 something was wrong with the product or business. For example, unexpected
16 discontinuation of a product could result from a supply chain issue with a part or from a
17 personal issue with the business owner that has nothing to do with how the business is run
18 or the product's quality. Therefore, the Court finds that the statements in the
19 communication do not meet the heightened "clear or necessary" standard.

20 Having found that the trade libel claim must be dismissed again, the Court considers
21 if the claim should be dismissed with or without leave to amend. Generally, a "district court
22 should grant leave to amend . . . unless it determines that the pleading could not possibly
23 be cured by the allegation of other facts" such that granting leave would be futile. *See Lopez*
24 *v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation omitted). However, this
25 is the second time that Defendants have moved to dismiss this claim and Plaintiffs have
26 been given an opportunity to cure the deficiency in the complaint. The Court previously
27 dismissed the same claim on the same ground and similar reasoning. Moreover, given the
28 standard to state a trade libel claim and because there is no dispute at to the contents of the

communication itself and the statements contained therein, the Court finds that giving Plaintiffs another chance to amend would be futile at this time. Accordingly, Plaintiffs' trade libel claim is **DISMISSED WITHOUT LEAVE TO AMEND.**

### C. UCL Claim

Next, Defendants move to dismiss Plaintiffs' UCL claim because they argue that such claims only provide limited damages—specifically, injunctive relief or restitution—and Plaintiffs fail to request any relief that qualifies in their FAC. ECF No. 16-1 at 9-10.

"[U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). "[A]n order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.' The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.* (internal citation omitted).

"[T]here is a fundamental distinction between restitution, which is allowed, and damages, which are not. The term 'damages' describes 'a payment made to compensate a party for injuries suffered,' whereas 'restitution' takes place when '[t]he defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct.'" *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985); *see also Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1085–86 (C.D. Cal. 2003) ("Restitution measures the remedy by the defendants' gain, whereas damages measures the plaintiff's loss.") (cleaned up). "In short, the sine qua non of a claim for restitution under section 17200 is that (1) the defendant obtained something to which it was not entitled and (2) the plaintiff gave up something which he or she was entitled to keep. In such cases, the court may exercise its equitable power and order the defendant to give back that which was wrongfully acquired." *Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1036–37 (C.D. Cal. 2021).

Plaintiffs attempt to recast damages as restitution. In order to support their UCL claim, Plaintiffs claim as restitution the amount of monies they have spent to do restorative advertising to repair damage to goodwill as a result of Defendants' communication. ECF No. 18 at 20-21. This does not qualify as restitution, however. Based on the well-established principles drawing the line between damages and restitution, these restorative advertising costs do not qualify as something defendant must give back to plaintiff for something defendant wrongfully received. Rather, these costs are more appropriately qualified as a payment to plaintiff to compensate him for injuries caused by defendant—the classic definition of damages. Thus, Plaintiffs' efforts to recategorize these costs fail.

In addition, Plaintiffs' cases that purport to support the proposition that even costs a plaintiff pays a third party (rather than the defendant) can still be restitution are inapposite. First, in *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1318 (2009), monies were not directly paid to the named defendant but the third party paid was "a corporate affiliate of [defendant]" and in "collecting payments from [defendant's] policyholders, acts as the agent of [defendant]." This relationship does not exist here between the third party advertising agencies Plaintiffs paid and Defendants. Second, Plaintiffs cite to *People ex rel. Brown v. Black Hawk Tobacco, Inc.*, 197 Cal. App. 4th 1561, 1567 (2011), for a similar proposition but that case dealt with injunctive relief, which like restitution can support a UCL claim, and nothing in the case discusses restitution and the word fails to wholly appear anywhere in the case.

Further, Plaintiffs cite cases in their opposition to suggest that the damages requirement to sustain a UCL claim is broader than Defendants' cite. ECF No. 18 at 19-20. However, Plaintiffs seem to be conflating the issue of whether a party has standing to bring a UCL claim with what kind of damages can ultimately sustain a UCL claim on the merits. Indeed, the case that Plaintiffs themselves cite to make this clear. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 335–37 (2011). The language regarding a plaintiff only needing to show that he "lost money or property" is to establish standing under the UCL. However, the *Kwikset* court specifically stated that the two requirements were not the

same—rejecting a party's argument that demonstrating no compensable losses to restitution means that the party lacked standing as "conflat[ing] the issue of standing with the issue of the remedies to which a party may be entitled. That a party may ultimately be unable to prove a right to damages (or, here, restitution) does not demonstrate that it lacks standing to argue for its entitlement to them." *Id.* The court recognized that the two were different: "A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other" whereas "the economic injury that an unfair business practice occasions may often involve a loss by the plaintiff *without any corresponding gain by the defendant*." *Id.* (emphasis added). In such circumstances, the *Kwikset* court recognized that a plaintiff could have standing to bring a UCL claim to request injunctive relief even in the absence of restitution damages—highlighting that restitution and general damages cannot be conflated. *Id.*

Thus, the cases that Plaintiffs cite are not relevant here—Defendants are not challenging Plaintiffs' standing to bring a UCL claim, but rather whether they have alleged damages that could be cognizable under such a claim. As stated above, the restorative advertising costs do not qualify as restitution damages. Further, Plaintiffs do not have an injunctive claim either. Having failed to allege either restitution or injunctive relief as required under the UCL, the Court **GRANTS** the motion to dismiss this claim. Like with the trade libel claim, the Court previously dismissed this claim on the same ground and similar reasoning, and the Court finds that leave to amend would be futile. Thus, this claim will be dismissed **WITHOUT LEAVE TO AMEND**.

### D. Lanham Act Claim

Finally, Defendants move to dismiss Plaintiffs' Lanham Act claim under § 1125(a)(1)(B). ECF No. 16-1 at 13-15. This provision makes liable any person who "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Defendants argue that this provision cannot apply

to the statements made in the communication here because they do not pertain to the products' "nature, characteristics, qualities, or geographic origin" and because the communication does not qualify as a "commercial advertising or promotion." ECF No. 16-1 at 13-15.

As to this first argument, regarding the scope of what "nature, characteristics, qualities, or geographic origin" means within § 1125(a)(1)(B), the parties do not provide the Court with binding authority.[1] Upon independent review, there appears to be a dearth of case law on this issue. The most relevant Ninth Circuit case is *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008), where the court stated that "the nature, characteristics, and qualities of [a product] under the Lanham Act are more properly construed to mean *characteristics of the good itself*." *Id.* at 1144 (emphasis added). *Sybersound* involved whether a § 1125(a)(1)(B) claim could be brought based on false statements regarding the copyright license status of a music record and found that it could not because such information was not inherent about the good. *Id.* (characteristics of the good itself would include things like "the original song and artist of the karaoke recording, and the quality of its audio and visual effects"). Some district courts have relied on this statement to impose this inherent to the product limitation. *See, e.g., San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1053 (S.D. Cal. 2019) ("Under either theory of literal falsity or misleading/confusing consumers, the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product."); *Maximum Availability Ltd. v. Vision Sols., Inc.*, No. CV 10-1488-GW(RZX), 2011 WL 13176820, at *6 (C.D. Cal. Dec. 12, 2011) (info regarding number of customers who switched from Plaintiff to Defendant does not concern "nature, characteristics, qualities, or geographic origin").

---

[1] Defendants do not cite cases to support their interpretation. Plaintiffs cite to one Ninth Circuit case, *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999), but the case dealt with what constitutes commercial advertising, not what constitutes "nature, characteristics, qualities, or geographic origin" and the court did not make a specific holding on the latter issue.

1  The Court finds that the reasoning in *Sybersound* and the cases interpreting it counsels a finding that whether a product is discontinued or not does not qualify as a "characteristic of the good itself" or an "inherent or material quality of the product." *Sybersound*, 517 F.3d at 1144; *San Diego Cnty. Credit Union*, 360 F. Supp. 3d at 1053. Thus, the Court **GRANTS** the motion to dismiss this claim. Because this claim again depends on the contents of the communication itself and the statements contained therein, the Court finds that giving Plaintiffs leave to amend would be futile.  Accordingly, Plaintiffs' Lanham Act false advertising claim is **DISMISSED WITHOUT LEAVE TO AMEND.**

## IV. CONCLUSION

After due consideration and for the reasons discussed above, the Court **GRANTS** Defendants' motion to dismiss the trade libel claim, the UCL claim, and the Lanham Act false advertising claim without leave to amend. Defendants must file a response to the remaining claims in the FAC that were not challenged in this motion **within 14 days of this order**.

**IT IS SO ORDERED.**

Dated:  April 1, 2025

Honorable James E. Simmons Jr.
United States District Judge

12

3:23-cv-1810-JES-AHG